**Ilyse Klavir Attorney at Law**
**The Law Offices of Ilyse Klavir**
1672 W Avenue J #207c Lancaster, CA 93534
**Phn: 661-339-2969**
**Fax: (661) 952-1902**
**Email: ilyse@klavirlaw.com**
Attorney for Russell and Denise Johnson

UNITED STATES UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Chapter 13 Case |
| Russell and Denise Johnson | Case No.: 09-26016 |
| DEBTORS | AMENDED NOTICE OF MOTION AND MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY; TO STAY POST PETITION PAYMENTS TO HSBC MORTGAGE SERVICES INC. FORMERLY KNOWN AS HOUSEHOLD FINANCE CORP "HFC"; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT |
| | Date: March 23, 2010<br>Time: 1:00 PM<br>Place: Courtroom 303<br>21041 Burbank Blvd. Woodland Hills, CA |

TO THE HONORABLE GERALDINE MUND, UNTED STATES BANKRUPTCY JUDGE,

CHAPTER 13 TRUSTEE, HSBC MORTGAGE SERVICES INC. FORMERLY KNOWN AS

HOUSEHOLD FINANCE CORP. ("HFC") PARTIES IN INTEREST AND COUNSEL OF

RECORD.

Comes Now Russell and Denise Johnson

Chapter 13 DEBTORS ("DEBTORS"), and hereby move this Court pursuant to 11 U.S.C. §§506(a)

and 1325(a)(5)(B) and *In re Lam(Lam vs. Investors Thrift)*, 211 B.R.36 (9th Cir. BAP 1997), for a

1

1  determination of the secured value of the real property located at 2051 Morningside Ave. Lancaster
2  CA 93535 (A.P.N. 3150-042-010) (the "REAL PROPERTY"), already encumbered by a first position
3  deed of trust in favor of PNC Bank ("PNC"), with a balance due at the date the Petition was filed of
4  $150698.98 and a second position deed in trust in favor of HSBC Mortgage Services Inc. formerly
5  known as Household Finance Corp. ("HFC") in the amount of 134569.74at the date the petition was
6  filed in the amount of $110,000.00 based upon an appraisal as of February 28, 2010 by Tracy Griffith,
7  and stay post petition payments by DEBTORS and to treat the claims of HFC, (2nd) as wholly
8  unsecured for the purposes of plan confirmation, on the grounds that the value of the REAL
9  PROPERTY has declined in value since DEBTORS refinanced the REAL PROPERTY in
10  December,2003 with PNC in the amount of $153,367 and a HFC second 133,472 dated April 27,
11  2007 based on a value of at least $ 290,000 were recorded as a lien against the REAL PROPERTY
12  with the Los Angeles County Recorder's Office, such that the value of the REAL PROPERTY no
13  longer has equity adequate to fully secure encumbrances, resulting in HFC (2nd) being 100%
14  undersecured and not entitled to treatment under DEBTORS' proposed Chapter 13 Plan as a secured
15  creditor for the full amount of their purported claim; and on the further grounds set forth in the
16  Memorandum of Points and Authorities, Declaration in Support, filed concurrently herewith, and on
17  such further grounds as may be presented in oral arguments before Court or upon Reply to any
18  opposition filed in response to this Motion.

19  NOTICE IS FURTHER GIVEN that in accordance with the Local Rules of this Court, should
20  any party wish to oppose this Motion, they must do so by written opposition filed and served upon
21  counsel for DEBTORS not less that fourteen (14) days from the date of notice of this Motion, and
22  failure to do so may be deemed a waiver of any opposition which may have been made, resulting in
23  entry of an order granting the within Motion.

24  WHEREFORE, DEBTORS respectfully request the Court grant their Motion, and value the
25  Real Property at 2051 Morningside Ave. Lancaster CA 93535 (A.P.N. 3150-042-010) at $110,000,
26  deeming HFC (2nd) an undersecured creditor for the purpose of treatment under DEBTORS' proposed
27  Chapter 13 Plan.

28

2

1

2

3

4   Trustee will not advance to HFC (2nd), on account of any proposed Chapter 13 Plan, any payment for

5   the purposes of curing any amount in default or in arrears to HFC (2nd), and for such other and further

6   relief as the Court may deem just and proper.

7

8

9   Dated: March 16, 2010

10

11                                              Law Offices of Ilyse Klavir,

12                                              By:

13                                              Ilyse Klavir
                                                Attorney for Russell and Denise Johnson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION

4

5

6

7

8

9

10

11

12

This MOTION concerns the valuation of DEBTOR'S residential real property located at 2051 Morningside Ave. Lancaster CA 93535 (A.P.N. 3150-042-010) the "REAL PROPERTY"), previously valued by the HFC (2nd) REAL PROPERTY at least as much as the $290,000, on April 27, 2007, upon which the existing encumbrance with PNC (1st) ( $153,367) obtained in December,2003 and the second encumbrance of HFC ($133,472) dated April 27, 2007 were recorded as liens against the Real Property with the Los Angeles County Recorder's Office. See, Amended Schedules A and D, attached and incorporated by reference as Exhibits "1" and "2," to DEBTOR'S Declaration filed concurrently herewith.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

At this time, due to the general decline in real estate values in Southern California, which has substantially affected the area in which the Real Property is located, the value of the Real Property has substantially declined in value, no longer entirely supporting the security interest of HFC (2nd). In making this Motion, DEBTORS rely upon the Appraiser's Report that is attached and incorporated by reference as Exhibit "3," to the Declaration filed concurrently herewith. Further, as set for the in DEBTORS' Declaration filed concurrently herewith, DEBTORS rely on their understanding as homeowners that the value of the Real Property, as set forth in their Schedules A and D, is comparable to other home values in their area, as of the commencement of this case, which value DEBTORS reasonably believe may continue to decline as of the confirmation of their Chapter 13 Plan. DEBTORS, therefore, believe a valuation of $110,000 is fair and reasonable pursuant to 11 U.S.C. §§506(a) and 1325(a)(5)(B); Zimmer v. PSB Lending, 313 F.3d 1220 (9th Cir.2002), wherein the Ninth Circuit affirmed the allowance of lien stripping in the course of a Chapter 13; In re Lam (Lam vs. Investors Thrift), 211 B.R. 36 (9th Cir.BAP 1997); and In re Crain, 243 B.R. 75 (Bankr.CD 1999), for the purpose of valuation of the Real Property and classification of HFC (2nd.) as a Class Five general unsecured creditor in DEBTOR'S Chapter 13 Plan.

28

II.

## FACTUAL BACKGROUND

On November 30, 2009, DEBTORS filed a voluntary petition under Chapter 13, Title 11 United States Code commencing case no.09-26016 ("Case"), reasonably believing such was needed to stay the potential foreclosure of their residential Real Property and to enable DEBTORS to reorganize their financial affairs, including concerning the Real Property. The Real Property is DEBTOR'S principal residence. As set forth on DEBTOR'S Schedule I and J, DEBTOR'S income is adequate to make the payments due PNC (1st), but not those due HFC (2nd) and not to cure the default on the HFC (2nd), See DEBTOR'S Declaration filed concurrently herewith.

DEBTORS originally purchased the REAL PROPERTY June 26, 2002 for $144,500. In December, 2003 the Real Property was refinanced by PNC (1st), upon which the encumbrance $153,367 was recorded as a lien against the Real Property with the Los Angeles County Recorder's Office. On the same April 27, 2007 there was a second loan recorded on the Real Property by HFC (2nd) valued at that time at least $290,000, upon which the encumbrance $133,472 was recorded as an additional lien against the Real Property with the Los Angeles County Recorder's Office, such that the value of the REAL PROPERTY no longer has equity adequate to fully secure encumbrances, resulting in HFC (2nd) being 100% undersecured and not entitled to treatment under DEBTOR'S proposed Chapter 13 Plan as a secured creditor for the full amount of their purported claim. See DEBTOR'S Declaration files concurrently herewith.

5

1

2

### III.

3

### ARGUMENT

4

A

5

<u>The Real Property Must be Valued for Purposes of the Chapter 13 Plan Confirmation.</u>

6

Bankruptcy Code section 506(a) provides in pertinent part that:

7

"An allowed claim of a creditor secured by a lien on property in which the estate has an

8

interest... is a secured claim to the extent of the value of such creditor's interest in the

9

estate's interest in such property, ... and as an unsecured claim to the extent that the value

10

of such creditor's interest... is less than the amount of such allowed claim. *Such value shall*

11

*be determined in light of the purpose of the valuation and of the proposed disposition or use*

12

*of such property, and in conjunction with any hearing on such disposition or use or an a*

13

*plan affecting such creditor's interest.* [emphasis added]."

14

In the case of <u>In re Taffi</u>, 144 B.R. 105, 109 (Bankr.C.D.Cal.1992), the Honorable Vincent P.

15

Zurzolo, Bankruptcy Judge, considered the factors relevant to a determination of a motion to

16

determine the secured portion of a claim. In that decision, Judge Zurzolo reasoned that "[i]t would

17

appear from the above quoted language that the value of a lien creditor's interest in collateral that is

18

property of a bankruptcy estate must be determined after considering two factors: (1) the purpose of

19

the valuation and (2) the proposed disposition or use of the property." The Bankruptcy Appellate

20

Panel in the case of <u>In re Lam</u>, 211 B.R. 36 (9th Cir. 1997), considered the exact facts set forth in the

21

case and, held the undersecured creditor would be stripped of its lien and treated as an unsecured

22

creditor in the course of the DEBTORS' Chapter 13 plan. The Court required a finding that the

23

undersecured creditor must be *wholly undersecured*, with not even a one dollar amount of secured

24

value. Judge Zurzolo revisited his reasoning in <u>Taffi</u> in the case of <u>In re Crain</u>, 243 B.R. 75 (Bankr.CD

25

1999), in which it was held that valuation of the real property collateral will be made as of the date of

26

confirmation, and not as of the commencement date. In the case of <u>Zimmer v. PSB Lending,</u> 313 F.3d

27

1220 (9th Cir. 2002), the Ninth Circuit took up the <u>Lam</u> issue, and held that "... more simply, a claim

28

such as a mortgage is not a "secured claim" to the extent that it exceeds the value of the property that

1  secures it. Under the Bankruptcy Code, "secured claim" is thus a term of art; not every claim that is

2  secured by a lien on property will be considered a "secured claim." Id. At 1223.

3          At this time, due to the general decline in real estate values in Southern California, which

4  has substantially affected the area in which the Real Property is located, the value of the Real Property

5  has substantially declined in value, no longer entirely supporting the security interest of HFC. In

6  making this Motion, DEBTORS rely upon the appraiser's opinion that is attached and incorporated by

7  reference as Exhibit "3", to the Declaration filed concurrently herewith. Further, as set forth in

8  DEBTORS'S Declaration filed concurrently herewith, DEBTORS rely on their understanding as

9  homeowners that the value of the Real Property, as set forth in their Schedules A and D, is comparable

10  to other home values in their area, as of the commencement of this case, which value DEBTORS

11  reasonably believe may continue to decline as of the confirmation of their Chapter 13 Plan.

12  DEBTORS reasonably, therefore, believe a valuation of $110,000 is fair and reasonable for the

13  purpose of valuation of the Real Property and classification of HFC (2nd) as a Class Five general

14  unsecured creditor in DEBTOR'S Chapter 13 Plan.

15                                        B.

16  The Valuation of the Real Property Is Necessary for an Effective Reorganization and DEBTORS

17                  Should Not Be Required to Make Post Petition Payments.

18          As provided in Section 506(a), valuation of the secured interest should take place "… in

19  conjunction with any hearing … on a plan affecting such creditor's interest." This Motion is made in

20  conjunction with DEBTORS'S Chapter 13 Plan. DEBTORS have demonstrated under Section 506(a)

21  that the Real Property is valued less than the security interest of PNC (2nd), and that reorganization is

22  in process. Accordingly, PNC (2nd) is not entitled to post petition payments. See, United Savings

23  Association of Texas v. Timbers of Inwood Forest Association, Limited, 484 U.S. 365, 108 S.Ct. 626,

24  98 L. Ed.2d 740 (1988).

25

26

27

28

IV.

Conclusion

DEBTORS respectfully requests the Court grant their Motion, and value the Real Property at $110,000, deeming HFC (2nd) an undersecured creditor for the purpose of treatment under DEBTORS'S proposed Chapter 13 Plan and that DEBTORS is relieved from making any post petition payments to HFC (2nd), and that the Chapter 13 Trustee will not advance to HFC (2nd), on account of any proposed Chapter 13 Plan, any payment for the purposes of curing any amount in default or in arrears to HFC (2nd), and for such other and further relief as the Court may deem just and proper.

Dated: March 16, 2010

Law Offices of Ilyse Klavir

By:

Ilyse Klavir

Attorney for Russell and Denise Johnson

8

1

2

3

## SUPPORTING DECLARATION OF RUSSELL JOHNSON

4   I, Russell Johnson, declare and state as follows:

5   1.     I am one of the DEBTORS who on November 30, 2009, caused to be filed a voluntary

6   petition under  Chapter 13, Title 11 United States Code commencing case no. 09-26016  (the "Case")

7   2.     At the time the Case was filed, it was done so, reasonably believing such was needed to

8   stay the potential foreclosure of our residential Real Property and enable us to reorganize our financial

9   affairs, including concerning the Real Property.

10   3.     The Real Property is our principal residence located at2051 Morningside Ave. Lancaster

11   CA  93535 (A.P.N. 3150-042-010) (the "REAL PROPERTY").

12   4.     As set forth on our Amended Schedule I and J, our income is adequate to make payments

13   due PNC (1st) but not those due HFC (2nd) my income is not adequate to pay the arrearages due and

14   owing HFC (2nd).

15   5.     We originally purchased the REAL PROPERTY on June 26, 2002 at the price of $144,500.

16   In December 2003 the Real Property was refinanced upon which the encumbrances with PNC (1st)

17   $153,367 was recorded.  On April 27, 2007 the REAL PROPERTY was financed with a second from

18   the HFC (2nd) in the amount of ($133,472) that was recorded as a lien against the Real Property with

19   the Los Angeles County Recorder's Office. See Schedules A and D attached and incorporated by

20   reference as Exhibits "1" and "2."

21   6.     At this time, due to the general decline in real estate values in Southern California, which

22   has substantially affected the area in which the Real Property is located, the value of the Real Property

23   has substantially declined in value, no longer entirely supporting the security interest of HFC (2nd).

24   7.     In making this Motion, we rely upon the appraiser's opinion that is attached and

25   incorporated by reference as Exhibit "3", to the Declaration filed concurrently herewith. Further, we

26   rely on our understanding as homeowners that the value of the Real Property, as set forth in our

27   amended schedules A and D, is comparable to other home values in our area, as of the commencement

28   of this case. I reasonably believe values may continue to decline and will be lower as of the

confirmation of their Chapter 13 plan.

8.       I, therefore, believe a valuation of $110,000.00 is fair and reasonable for the purpose of valuation of the Real Property and classification of HFC (2nd) as a Class Five general unsecured creditor in DEBTORS'S Chapter 13 Plan.

9.       Based upon a valuation of the Real Property of $110,000, along with the contribution of our post petition income from earnings, we will be able to fund our Chapter 13 plan. See, Schedules I and J, attached as Exhibits "4" and "5," and incorporated by this reference.

10.      In the course of this Chapter 13 case, and in preparation for this Motion, 1 spoke with local Realtors, researched the local listings of pending sales and closed sales and, as a homeowner, determined the fair market value of the Real Property to be approximately $110,000, consistent with the appraised value that is attached Exhibit "3," to the Declaration filed concurrently herewith.

I declare under penalty of perjury, under the laws of these United States of America and California, that the foregoing is true and correct, such that if called to testify, I could and would testify thereto.

Executed on March 16, 2010 in Los Angeles County.

Russell Johnson

1    ## SUPPORTING DECLARATION OF TRACY L. GRIFFITH

2

3

4    I, Tracy L. Griffith, declare and state as follows:

5    1.    I am qualified to make this declaration based upon my knowledge of real estate appraising, as

6    set forth further in the Appraiser's Report that is attached and incorporated by this reference as Exhibit

7    "3," that was prepared for the purpose of determining the value of the Real Property located at 2051

8    Morningside Ave. Lancaster CA  93535 (A.P.N. 3150-042-010) (the "REAL PROPERTY"),

9    2.    In the course of preparing the Appraiser's Report I followed the practices and procedures

10    required of my profession in determining the value of the Real Property. I have no pre-existing or

11    existing relationship with either of the DEBTORS, or the attorney for the DEBTORS. I do not own an

12    interest in the Real Property and have not been offered an interest in the Real Property. I was

13    compensated for my services at the time I delivered the Appraiser's Report.

14    3.    Based upon the evaluation and analysis prepared it is my professional opinion, as

15    supported by the attached Appraiser's Report, that the value of the Real Property, as of the date of the

16    Appraiser's Report is approximately $110,000.

17

18    I declare under penalty of perjury, under the laws of these United States of America and California,

19    that the foregoing is true and correct, such that if called to testify, I could and would testify thereto.

20    Executed on March 16, 2010 in Los Angeles County.

21

22

23    Tracy L. Griffith

24

25

26

27

28

11

# Exhibit 1

B6A (Official Form 6A) (12/07)

IN RE Johnson, Russell Thomas & Johnson, Denise _____ Case No. 09-26016
_____
Debtor(s)    (If known)

## AMENDED SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| Residence- 2051 Morningside Dr. Lancaster CA 93535 | | C | 118,000.00 | 275,736.00 |
| Timeshare- Monarch Grand Vacation | | C | 2,000.00 | 17,509.00 |

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

TOTAL    120,000.00

(Report also on Summary of Schedules)

# Exhibit 2

B6D (Official Form 6D) (12/07)

IN RE Johnson, Russell Thomas & Johnson, Denise _____    Case No. 09-26016 _____
                          Debtor(s)                                              (If known)

## AMENDED SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H— Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 5501<br><br>HSBC Mortgage Services, Inc.<br>636 Grand Regency Blvd<br>Brandon, FL 33510 | | W | Mortgage account opened 2007-04-24<br>Residence - 2nd Mortgage<br><br><br>VALUE $ 118,000.00 | | | | 134,569.74 | 134,569.74 |
| ACCOUNT NO. 5695<br><br>Monarch Grand Vacations<br>23091 Mill Creek Dr.<br>Laguna Hills, CA 92653 | | C | Installment account opened 2005-11-14<br>Timeshare<br><br><br>VALUE $ 2,000.00 | | | | 17,509.00 | 15,509.00 |
| ACCOUNT NO.<br><br>RMI<br>1110 Montlimer Dr., Ste 310<br>Mobile, AL 36609 | | | Assignee or other notification for:<br>Monarch Grand Vacations<br><br><br>VALUE $ | | | | | |
| ACCOUNT NO. 3517<br><br>PNC Mortgage<br>P.O. Box 54828<br>Los Angeles, CA 90054-0828 | | C | Mortgage account opened 2003-12-29<br>Residence - 1st Mortgage<br><br><br>VALUE $ 118,000.00 | | | | 142,264.00 | 24,264.00 |

___1___ continuation sheets attached

Subtotal
(Total of this page) $ 294,342.74  $ 174,342.74

Total
(Use only on last page) $         $

(Report also on Summary of Schedules.)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6D (Official Form 6D) (12/07) - Cont.

IN RE Johnson, Russell Thomas & Johnson, Denise _____    Case No. 09-26016
                            Debtor(s)                                             (If known)

## AMENDED SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 9587 <br><br>Wachovia Dealer Services, Inc. <br>Attn: Correspondence <br>P.O. Box 168048 <br>Irving, TX 75016-8048 | | H | Installment account opened 2006-08-30 <br>Auto- 01 Mercedes Benz <br><br><br>VALUE $ 8,275.00 | | | | 9,527.00 | 1,252.00 |
| ACCOUNT NO. <br><br><br><br> | | | <br><br><br>VALUE $ | | | | | |
| ACCOUNT NO. <br><br><br><br> | | | <br><br><br>VALUE $ | | | | | |
| ACCOUNT NO. <br><br><br><br> | | | <br><br><br>VALUE $ | | | | | |
| ACCOUNT NO. <br><br><br><br> | | | <br><br><br>VALUE $ | | | | | |
| ACCOUNT NO. <br><br><br><br> | | | <br><br><br>VALUE $ | | | | | |

Sheet no. ___1___ of ___1___ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal
(Total of this page) $ 9,527.00 | $ 1,252.00

Total
(Use only on last page) $ 303,869.74 | $ 175,594.74

(Report also on Summary of Schedules.)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

| UNITED STATES BANKRUPTCY COURT    CENTRAL DISTRICT OF CALIFORNIA SAN FERNANDO VALLEY DIVISION | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Russell Thomas Johnson | Case Number:SV09-26016-GM |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>HSBC Mortgage Services, Inc. | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>HSBC Mortgage Services, Inc.<br>636 Grand Regency Blvd<br>Brandon, Florida 33510 | **Court Claim Number:**_____<br>(*If known*)<br><br>Filed on: |
| Name and address where payment should be sent (if different from above):<br>HSBC Mortgage Services, Inc.<br>636 Grand Regency Blvd<br>Brandon, Florida 33510<br><br>Telephone Number: (716) 651-6350 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:   $134,569.74<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** Money Loaned<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:** xxxxxx5501<br><br>**3a. Debtor may have scheduled account as:** _____<br>(See instruction #3a on reverse side.) | |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:**  ☒  Real Estate ☐  Motor Vehicle ☐  Other: _____<br>**Describe:**  2051 Morningside Ave, Lancaster, California 93535<br><br>**Value of Property:** not available      **Annual Interest Rate:**<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $4,817.69 **Basis for perfection:** Recordation of Lien<br><br>**Amount of Secured Claim:** $134,569.74   **Amount Unsecured** $0.00 | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| 6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br>7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br>If the documents are not available, please explain: | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>**Amount entitled to priority:**<br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | | |
|---|---|---|
| Date:<br>December 22, 2009 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>/s/ Lawrence J. Buckley  as Creditor's Authorized Agent<br>972.643.6600 | P.O. Box 829009<br>Dallas, TX 75382-9009 |
| | | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
7675-N-2757

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SAN FERNANDO VALLEY DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. SV09-26016-GM |
| RUSSELL THOMAS JOHNSON | § | |
| DENISE JOHNSON | § | CHAPTER 13 |
| | § | |
| | § | JUDGE GERALDINE MUND |

## EXHIBIT A

ITEMIZATION OF CLAIM AND SUMMARY OF SUPPORTING
DOCUMENTS FOR CLAIM OF HSBC MORTGAGE SERVICES, INC.
REGARDING CERTAIN COLLATERAL DESCRIBED AS:
2051 MORNINGSIDE AVE, LANCASTER, CALIFORNIA 93535

SECTION 1. ITEMIZATION OF CLAIM

| | | |
|---|---|---|
| 1. | Total Debt  (As of November 30, 2009) | $134,569.74 |
| 2. | Interest rate as of  November 30, 2009 | 11.18% |
| 3. | Interest from Last Paid Installment | $5,077.72 |
| 4. | Detail of arrearage: (through Nov 09) | |
| | 4 payments August 2009 through November 2009 @ $1,272.75 each: | $5,091.00 |
| | Accrued late charges | $305.73 |
| | ** ATTORNEY FEES AND COSTS | $0.00 |
| | ** OTHER CHARGES | |
| | NSF Fees | $75.00 |
| | Less Suspense Account Balance | ($654.04) |
| | TOTAL ARREARAGE | $4,817.69 |

The current monthly payment amount is $1,272.75.  The monthly payment amount may change due to escrow
requirements and/or interest rate adjustments.

Name of Creditor: HSBC Mortgage Services, Inc.
File Number 7675-N-2757 / poc

Case 1:09-bk-26016-GM    Doc 23    Filed 03/18/10    Entered 03/18/10 16:02:43    Desc
Case 1:09-bk-26016-GM    Main Document    03 Page 19 of 44 ered 03/09/10 14:14:39    Desc
Exhibit (s) A - C    Page 19 of 20

FORM B10 (Official Form 10) (Rev 4/01)

| United States Bankruptcy Court | | State of | Proof of Claim |
|---|---|---|---|

| Name of Debtor    JOHNSON, RUSSELL T and DENISE JOHNSON | Case Number    0926016 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case.
A 'request' for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>    PNC Mortgage, a division of PNC Bank, N.A. | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>    PNC Mortgage, a division of PNC Bank, N.A.<br>    3232 Newmark Dr<br>    Miamisburg, OH 45342<br>Attn:    BANKRUPTCY DEPT<br>Telephone number:    (866) 754-0659 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | This space is for Court Use Only |

| Account or other number by which creditor identified debtor: | Check here if this claim    ☐ replaces<br>    ☐ amends    a previously filed claim, dated: _____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money Loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other

- ☐ Retiree benefits as defined in 11 U.S.C § 1114(a)
- ☐ Wages, salaries, and compensation (Fill out below)
  - Your SS#: _____ - _____ - _____
  - Unpaid compensation for services performed
  - from _____ to _____
  - (date)    (date)

| 2. Date debt was incurred:    12/29/2003 | 3. If court judgment, date obtained: |
|---|---|

**4. Total Amount of Claim at Time Case Filed:** $ _____ 142,053.72

If all or part of your claim is secured or entitled to priority, also complete item 5 or 6 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attached itemized statement of all interest or additional charges.

| **5. Secured Claim** | **6. Unsecured Priority Claim** |
|---|---|
| ☒ Check this box if your claim is secured by collateral (including a right of setoff).<br><br>Brief Description of Collateral:<br>☒ Real Estate    ☐ Motor Vehicle<br><br>☐ Other _____<br><br><br>Value of collateral: $    142,053.72<br><br><br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any $    9,719.80 | ☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $ ___<br><br>Specify the priority of the claim.<br>☐ Wages, salaries, or commissions (up to $4300), *earned within 90 days before filing of bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C § 507(a)(3)<br>☐ Contributions to an employee benefit plan- 11 U.S.C § 507(a)(4)<br>☐ Up to $1950* of deposits toward purchases, lease, or rental of property or services for personal, family, or household use - 11 U.S.C § 507(a)(6)<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C § 507(a)(7)<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C § 507(a)(8)<br>☐ Other - Specify applicable paragraph of 11 U.S.C § 507(a)<br>* Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| **7. CREDITS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>**8. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach summary.<br>**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This space is for Court Use Only |
|---|---|

| Date<br>    12/9/2009 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim<br>(attach copy of power of attorney)    BANKRUPTCY DEPT | |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C §§ 152 and 3571.

EXHIBIT C
24

Case 1:09-bk-26016-GM    Doc 23    Filed 03/18/10    Entered 03/18/10 16:02:43    Desc
Case 1:09-bk-26016-GM    Main Document 03/Page 20 of 14ed 03/09/10 14:14:39    Desc
                          Exhibit (s) A - C    Page 20 of 20

## United States Bankruptcy Court

IN RE:  JOHNSON, RUSSELL T and DENISE JOHNSON
                        Case #:          0926016
                        Chapter #:     13

### EXHIBIT "A"
ITEMIZATION OF TOTAL DEBT AND ARREARAGES AS OF THE TIME OF FILING.

| | |
|---|---|
| Total Debt as of: | $150,698.98 |
| Interest rate: | 5.875 |
| Principal Balance: | 142,053.72 |
| Interest from Last Paid Installment: | 6,945.17 |
| Payment Late Charges: | 0 |
| Accrued Late Charges: | 145.16 |
| Non-Escrow Advances: | |
| Escrow Advances: | 1,436.93 |
| Other Unpaid Fees: | 68 |
| Suspense Balance (*Subtracted): | |
| Total Debt: | $150,698.98 |
| Total Arrearages as of : | |
| Payments: | 9,488.64 |
| Payments Late Charges: | 0 |
| Additional Late Charges: | 145.16 |
| Escrow Shortages: | 0 |
| Pre-Petition Legal Fees: | 0 |
| Pre-Petition Legal Costs: | 0 |
| Additional Charges: | $86.00 |
| Suspense Balance (*Subtracted): | |
| Total Arrearages: | 9,719.80 |
| Post-Petition Date and Amount | 12/1/2009 |

EXHIBIT C
25

# Exhibit 3



# APPRAISAL OF REAL PROPERTY

### LOCATED AT:
2051 Morningside Avenue
TR=45528 LOT 10
Lancaster, CA 93535

### FOR:
Russell Johnson/Denise Johnson
2051 Morningside Avenue
Lancaster, CA 93535

### AS OF:
February 28, 2010

### BY:
Tracy L. Griffith
Valuation Concepts, LLC
21031 Ventura Blvd. #705
Woodland Hills, Ca 91364
Phone: 877-466-9817

## Uniform Residential Appraisal Report

File # 2051MorVC0737

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

SUBJECT

| | | | |
|---|---|---|---|
| Property Address 2051 Morningside Avenue | | City Lancaster | State CA    Zip Code 93535 |
| Borrower Russell Johnson/Denise Johnson | Owner of Public Record Russell Johnson/Denise Johnson | | County Los Angeles |
| Legal Description TR=45528 LOT 10 | | | |
| Assessor's Parcel # 3150-042-010 | | Tax Year 2009 | R.E. Taxes $ 2,180.00 |
| Neighborhood Name Lancaster | | Map Reference 4106/D1 | Census Tract 9005.03 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ N/A    ☐ PUD    HOA $ N/A    ☐ per year    ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Market Value
Lender/Client Russell Johnson/Denise Johnson    Address 2051 Morningside Avenue☐Lancaster, CA 93535
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?    ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s).    The subject property has not been listed in MLS within the past 12 months of the effective date of the appraisal report which is 02/28/2010.

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.    This appraisal report was performed for market value purposes, therefore no purchase contract was applicable.

CONTRACT

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record?  ☐ Yes ☐ No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?    ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.    N/A

NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☐ Stable ☒ Declining | PRICE    AGE | One-Unit    80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000)    (yrs) | 2-4 Unit    5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 60K  Low  New | Multi-Family    5 % |
| Neighborhood Boundaries North by E Avenue J, South by E Avenue L, East by 30th Street East, and west | | 185K  High  30 | Commercial    10 % |
| by 10th Street East. | | 115K  Pred.  20 | Other    % |

Neighborhood Description    See Additional Comments.

Market Conditions (including support for the above conclusions)    There is currently a balanced supply of active listings to meet demand for the area. Property values are declining, and this considered an REO driven market. MLS statistics indicate that sellers are receiving 90% to 95% of listing price on average, with an average marketing time of 90 to 180 days. Seller concessions typically include 1 to 3 points being paid.

SITE

Dimensions Please See Plat Map    Area 8,085 SF    Shape Rectangular    View No View
Specific Zoning Classification LRR1*    Zoning Description Single Family Residence
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?    ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area    ☐ Yes ☒ No    FEMA Flood Zone X500    FEMA Map # 06037C0450F    FEMA Map Date 9/26/2008
Are the utilities and off-site improvements typical for the market area?    ☒ Yes ☐ No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?    ☐ Yes ☒ No  If Yes, describe
No significant factors relating to the subject's site, topography, shape, size or drainage were noted.

IMPROVEMENTS

| General Description | Foundation | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls Wood/Average | | Floors Cpt/Tile/Pergo/Avg | |
| # of Stories One | ☐ Full Basement ☐ Partial Basement | Exterior Walls Stucco/Average | | Walls Drywall/Average | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area N/A sq.ft. | Roof Surface Tile/Average | | Trim/Finish Wood/Average | |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish N/A % | Gutters & Downspouts Aluminum | | Bath Floor Tile/Average | |
| Design (Style) Conventional | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type Aluminum/Average | | Bath Wainscot Tile/Average | |
| Year Built 1988 | Evidence of ☐ Infestation N/A | Storm Sash/Insulated None noted | | Car Storage ☐ None | |
| Effective Age (Yrs) 3-5 | ☐ Dampness ☐ Settlement | Screens Screens/Average | | ☒ Driveway  # of Cars  2 | |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # | | Driveway Surface Concrete | |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel Gas | ☒ Fireplace(s) # 1 ☒ Fence Wood/Blk | | ☒ Garage  # of Cars  2 | |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck Patio ☒ Porch Covrd Entr | | ☐ Carport  # of Cars | |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | | ☒ Att. ☐ Det. ☐ Built-in | |

Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains:    7 Rooms    3 Bedrooms    3 Bath(s)    1,453 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).    See Additional Comments.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject is maintained in average condition with no deferred maintenance that would impair marketability.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    ☒ Yes ☐ No  If No, describe

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 2051MorVC0737

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| There are | N/A | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ N/A | | | | to $ N/A | |
| There are | N/A | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ N/A | | | | to $ N/A | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 2051 Morningside Avenue | 43801 Amy Court | | 43724 Byron Drive | | 43467 Urbana Lane | |
| | Lancaster, CA 93535 | Lancaster, CA 93535 | | Lancaster, CA 93535 | | Lancaster, CA 93535 | |
| Proximity to Subject | | 0.31 miles W | | 0.13 miles SE | | 0.37 miles S | |
| Sale Price | $ N/A | | $ 115,000 | | $ 112,000 | | $ 120,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 65.30 sq.ft. | | $ 63.31 sq.ft. | | $ 76.48 sq.ft. | |
| Data Source(s) | | NDC/MLS/REALTX | | NDC/Public Records/MLS | | NDC/Public Records/MLS | |
| Verification Source(s) | | Doc# 240668 | | Doc# 58846 | | Doc# 12625 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Conventional | | Conventional | | Conventional | |
| Concessions | | 1st-$86,250 | | 1st-$76,000 | | 1st-$96,000 | |
| Date of Sale/Time | | 02/23/2010 | | 01/14/2010 | | 01/06/2010 | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 8,085 SF | 9,660 SF | -1,575 | 8,025 SF | | 6,528 SF | +1,557 |
| View | No View | No View | | No View | | No View | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 22 Years | 20 Years | | 20 Years | | 18 Years | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | -5,000 | Total Bdrms. Baths | |
| Room Count | 7    3    3 | 7    3    2.00 | +2,500 | 8    4    3.00 | | 7    3    2.00 | +2,500 |
| Gross Living Area | 1,453 sq.ft. | 1,761 sq.ft. | -7,700 | 1,769 sq.ft. | -7,900 | 1,569 sq.ft. | -2,900 |
| Basement & Finished | N/A | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2 Car Garage | 3 Car Garage | -2,000 | 3 Car Garage | -2,000 | 2 Car Garage | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| Pool/Spa | No Pool/No Spa | No Pool/No Spa | | No Pool/No Spa | | No Pool/No Spa | |
| Assessor's Parcel Number | 3150-042-010 | 3148-042-025 | | 3150-034-042 | | 3170-041-010 | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -8,775 | ☐ + ☒ - | $ -14,900 | ☒ + ☐ - | $ 1,157 |
| Adjusted Sale Price | | Net Adj. % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. % | $ 106,225 | Gross Adj. % | $ 97,100 | Gross Adj. % | $ 121,157 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    NDC Data
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    NDC Data
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/27/2007 | No additional transactions | No additional transactions | 10/09/2009 |
| Price of Prior Sale/Transfer | Deed of Trust | noted within the last 12 mths | noted within last 12 mths | $83,700/Trustee Sale |
| Data Source(s) | NDC/Doc# 1025703 | NDC/REALTX | REALTX | REALTX/Doc# 1541469 |
| Effective Date of Data Source(s) | 02/28/2010 | 02/28/2010 | 02/28/2010 | 02/28/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Within the past 36 months, the subject property has a prior deed of trust
transaction noted on 04/27/2007. Comparables #3, #4 and #5 have recorded trustee sales noted within the past 12 months. Comparables #1 and
#2 do not have any additional sales transactions noted within the last 12 months. Sales and history was researched through MLS and
NDC/REALTX Public Records.

Summary of Sales Comparison Approach    See Additional Comments.

Indicated Value by Sales Comparison Approach $ 110,000
Indicated Value by: Sales Comparison Approach $ 110,000    Cost Approach (if developed) $ 111,715    Income Approach (if developed) $
The sales comparison approach is given the most weight for it reflects buyer actions and is the best indicator of value. The cost approach supports
the sales comparison approach. The income approach is considered inapplicable as the area is primarily owner-occupied.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: Please see Statement of Limiting
Conditions.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 110,000 , as of    February 28, 2010 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005    Page 2 of 6    Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

File # 2051MorVC0737

See attached addenda.

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Site value has been determined by the extraction process due to lack of vacant land sales in the area. Ratio of land to value is typical for the area.

| | |
|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE ..................................................... =$ 25,000 |
| Source of cost data  Marshall and Swift | DWELLING    1,453 Sq.Ft. @ $    55.00  =$ 79,915 |
| Quality rating from cost service  Average  Effective date of cost data  2009 | N/A Sq.Ft. @ $    =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | =$ |
| Land to Improvement Ratio is not uncommon for "liked properties" in this | Garage/Carport    440 Sq.Ft. @ $    25.00  =$ 11,000 |
| market area.  Physical Depreciation is based on effective age and | Total Estimate of Cost-New    =$ 90,915 |
| deferred maintenance from a 65 year base. | Less    Physical    Functional    External |
| | Depreciation    4,200    =$( 4,200) |
| | Depreciated Cost of Improvements ............................... =$ 86,715 |
| | *As-Is* Value of Site Improvements .............................. =$ |

Estimated Remaining Economic Life (HUD and VA only)    62 Years  INDICATED VALUE BY COST APPROACH ................. =$ 111,715

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $    X Gross Rent Multiplier    = $    Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No    Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases    Total number of units    Total number of units sold

Total number of units rented    Total number of units for sale    Data source(s)

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report    File # 2051MorVC0737

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

# Uniform Residential Appraisal Report

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report
File # 2051MorVC0737

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER   Valuation Concepts, LLC | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Tracy L. Griffith_ | Signature _____ |
| Name  Tracy L. Griffith | Name _____ |
| Company Name   Valuation Concepts, LLC | Company Name _____ |
| Company Address   21031 Ventura Blvd., #705, Woodland Hills, CA 91364 | Company Address _____ |
| Telephone Number   (877) 466-9817 | Telephone Number _____ |
| Email Address   appraisals@valuationconceptsca.com | Email Address _____ |
| Date of Signature and Report   February 28, 2010 | Date of Signature _____ |
| Effective Date of Appraisal   February 28, 2010 | State Certification # _____ |
| State Certification # _____ | or State License # _____ |
| or State License #   AL032866 | State _____ |
| or Other (describe) _____  State # _____ | Expiration Date of Certification or License _____ |
| State  CA | |
| Expiration Date of Certification or License    1/15/2012 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 2051 Morningside Avenue | Date of Inspection _____ |
| Lancaster, CA 93535 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $    110,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name  Russell Johnson/Denise Johnson | COMPARABLE SALES |
| Company Name   Russell Johnson/Denise Johnson | |
| Company Address   2051 Morningside Avenue | ☐ Did not inspect exterior of comparable sales from street |
| Lancaster, CA 93535 | ☐ Did inspect exterior of comparable sales from street |
| Email Address _____ | Date of Inspection _____ |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Supplemental Addendum**    File No. 2051MorVC0737

| Borrower/Client | Russell Johnson/Denise Johnson | | | | |
|---|---|---|---|---|---|
| Property Address | 2051 Morningside Avenue | | | | |
| City | Lancaster | County | Los Angeles | State CA | Zip Code 93535 |
| Lender | Russell Johnson/Denise Johnson | | | | |

• **URAR : Additional Comments**

URAR: NEIGHBORHOOD MARKET FACTORS:
The subject is located in the city of Lancaster. This is an established neighborhood consisting of a mix of conventional and bungalow style SFR tract homes of various ages, displaying general similarity in design, appeal and utility, with variations in size. There's an adequate mix of multifamily residences, condominiums, commercial activity, employment opportunities and public support facilities, (schools, police, hospitals, recreation, fire stations, houses of worship, etc.) which are beneficial to the community, but along with traffic, may pose an adverse affect upon residences in close proximity to them. No atypical social, economic, governmental or environmental trends or characteristics were observed at this time.

URAR: ADDITIONAL FEATURES:
Unless otherwise stated, all improvements given value in this report appear legal and conforming to market area standards. Field measurements and room counts utilized.

URAR: SALES COMPARISON COMMENTS:
It should be noted that the subject's market area reflect's a broad range of values for properties with generally similar characteristics within the subject's immediate neighborhood and even broader based region. This was demonstrated to some degree by the comprables utilized in the report, but even more dramatically by a number of sales retained in the appraiser's file that were considered but deemed less applicable and subsequently not used. Though some of the market's reaction to various properties cannot be fully understood without more extensive information, which is typically unvailable through public information sources, it appears that much of the disparity in sales prices can be attributed to the cumulative impact of various property characteristics which are the more common factors affecting value (i.e., lot sizes, amenities, upgrading, GLA, external influences and various degrees of appeal based on architectural style, hardscaping, and overall general appeal). This has resulted in a broader range of difference in actual sale prices than would typically be desired, and more adjustments than normally required, but it was deemed necessary to properly reflect the subject's market area.  With consideration to all of the economic, external, functional and physical market factors influencing the subject, its market area and the sales that were available for comparative analysis, it is the appraisers opinion that the comparables used are the most reliable indicators of market value for the subject property.

GRID ADJUSTMENTS: Unless otherwise noted, all Market Grid adjustments are deemed to be self-explanatory; but all adjustments to the comparable sales reflect the appraiser's best estimates of the market's reaction to the differences between the subject property and the comparables. Though paired sales analysis is conducted to the degree that the available data allows, in most cases, data is too limited to be conclusively definitive and the adjustments are as much "qualitative" (reflecting generally positive or negative market influences) as they are quantitative (irrefutably derived from hard core data and adjusted). This approach adequately serves to ascribe or to depreciate value to any factor that is generally considered to have a measurable impact upon value.  In any case, the adjustment values utilized are reasonable relative to the limited amount of data that is typically available; as well as to anticipated market reaction to various property characteristics as is noted through experience in this and like markets and input from local brokers.

- Site adjustments were made at $1.00 per square foot.
- GLA adjustments were made at $25.00 per sq.ft. (For differences over 100 sqft)
- Garage parking adjustments were made at $2,000 per space.
- Bathroom adjustments were made at $2,500 per bathroom.
- Bedrooms over 3 were adjusted at $5,000 each.

Comparables #1 through #5 though smaller in GLA were given consideration for their close proximity to the subject property, recent dates of sale and similarity in functional utility, year built and appeal. All closed sales are adjusted under FNMA Adjustment Guidelines not exceeding 25% Gross and 15% Net adjustments. Value is derived from the actual sale prices and adjusted values of all the sales with all comparables contributing to a reliable value range. Due consideration was given to comparable #1 for its most recent date of sale.

| Signature | | Signature | |
|---|---|---|---|
| Name Tracy L. Griffith | | Name | |
| Date Signed February 28, 2010 | | Date Signed | |
| State Certification # | State | State Certification # | State |
| Or State License # AL032866 | State CA | Or State License # | State |

Form TADD2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 2051MorVC0737

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address 2051 Morningside Avenue | | 43642 17th Street | | 1768 Mesa Drive | | | |
| Lancaster, CA 93535 | | Lancaster, CA 93535 | | Lancaster, CA 93535 | | | |
| Proximity to Subject | | 0.37 miles SW | | 0.36 miles NW | | | |
| Sale Price | $ N/A | | $ 110,000 | | $ 90,000 | | $ |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 71.94 sq.ft. | | $ 51.78 sq.ft. | | $ sq.ft. | |
| Data Source(s) | | NDC/MLS/REALTX | | NDC/MLS/REALTX | | | |
| Verification Source(s) | | Doc# 1882299 | | Doc# 1461826 | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | FHA Financing | | Conventional | | | |
| Concessions | | 1st-$108,007 | | Not Public | | | |
| Date of Sale/Time | | 12/11/2009 | | 09/25/2009 | | | |
| Location | Average | Average | | Average | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 8,085 SF | 7,040 SF | +1,045 | 6,710 SF | +1,375 | | |
| View | No View | No View | | No View | | | |
| Design (Style) | Conventional | Conventional | | Conventional | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Actual Age | 22 Years | 21 Years | | 21 Years | | | |
| Condition | Average | Average | | Average | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7 3 3 | 7 3 2.00 | +2,500 | 7 3 3.00 | | | |
| Gross Living Area | 1,453 sq.ft. | 1,529 sq.ft. | -1,900 | 1,738 sq.ft. | -7,125 | sq.ft. | |
| Basement & Finished | N/A | N/A | | N/A | | | |
| Rooms Below Grade | N/A | N/A | | N/A | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | | |
| Energy Efficient Items | Standard | Standard | | Standard | | | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | | |
| Pool/Spa | No Pool/No Spa | No Pool/No Spa | | No Pool/No Spa | | | |
| Assessor's Parcel Number | 3150-042-010 | 3148-037-022 | | 3148-011-021 | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 1,645 | ☐ + ☒ - | $ -5,750 | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. % | $ 111,645 | Gross Adj. % | $ 84,250 | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/27/2007 | 09/03/2009 | 04/27/2009 | |
| Price of Prior Sale/Transfer | Deed of Trust | $245,861/Trustee Sale | $90,000/Trustee Sale | |
| Data Source(s) | NDC/Doc# 1025703 | REALTX/Doc# 1354149 | REALTX/Doc#608398 | |
| Effective Date of Data Source(s) | 02/28/2010 | 02/28/2010 | 02/28/2010 | |

Analysis of prior sale or transfer history of the subject property and comparable sales    See Page 2.

Analysis/Comments

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Location Map**

| Borrower/Client | Russell Johnson/Denise Johnson | | | | |
|---|---|---|---|---|---|
| Property Address | 2051 Morningside Avenue | | | | |
| City | Lancaster | County | Los Angeles | State CA | Zip Code 93535 |
| Lender | Russell Johnson/Denise Johnson | | | | |



**Plat Map**

| Borrower/Client | Russell Johnson/Denise Johnson | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2051 Morningside Avenue | | | | | |
| City | Lancaster | County | Los Angeles | State | CA | Zip Code  93535 |
| Lender | Russell Johnson/Denise Johnson | | | | | |



**Subject Photo Page**

| Borrower/Client | Russell Johnson/Denise Johnson | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2051 Morningside Avenue | | | | | |
| City | Lancaster | County | Los Angeles | State | CA | Zip Code 93535 |
| Lender | Russell Johnson/Denise Johnson | | | | | |



### Subject Front

| | |
|---|---|
| 2051 Morningside Avenue | |
| Sales Price | N/A |
| Gross Living Area | 1,453 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | Average |
| View | No View |
| Site | 8,085 SF |
| Quality | Average |
| Age | 22 Years |



### Subject Rear



### Subject Street

**Subject Photo Page**

| Borrower/Client | Russell Johnson/Denise Johnson | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2051 Morningside Avenue | | | | | | |
| City | Lancaster | County | Los Angeles | State | CA | Zip Code | 93535 |
| Lender | Russell Johnson/Denise Johnson | | | | | | |



### Subject Interior

2051 Morningside Avenue

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,453 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | Average |
| View | No View |
| Site | 8,085 SF |
| Quality | Average |
| Age | 22 Years |



### Subject Interior



### Subject Interior

## Comparable Photo Page

| Borrower/Client | Russell Johnson/Denise Johnson | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2051 Morningside Avenue | | | | | |
| City | Lancaster | County | Los Angeles | State | CA | Zip Code 93535 |
| Lender | Russell Johnson/Denise Johnson | | | | | |



### Comparable 1
43801 Amy Court

| | |
|---|---|
| Prox. to Subject | 0.31 miles W |
| Sales Price | 115,000 |
| Gross Living Area | 1,761 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Average |
| View | No View |
| Site | 9,660 SF |
| Quality | Average |
| Age | 20 Years |



### Comparable 2
43724 Byron Drive

| | |
|---|---|
| Prox. to Subject | 0.13 miles SE |
| Sales Price | 112,000 |
| Gross Living Area | 1,769 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.00 |
| Location | Average |
| View | No View |
| Site | 8,025 SF |
| Quality | Average |
| Age | 20 Years |



### Comparable 3
43467 Urbana Lane

| | |
|---|---|
| Prox. to Subject | 0.37 miles S |
| Sales Price | 120,000 |
| Gross Living Area | 1,569 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Average |
| View | No View |
| Site | 6,528 SF |
| Quality | Average |
| Age | 18 Years |

**Comparable Photo Page**

| Borrower/Client | Russell Johnson/Denise Johnson | | | |
|---|---|---|---|---|
| Property Address | 2051 Morningside Avenue | | | |
| City | Lancaster | County Los Angeles | State CA | Zip Code 93535 |
| Lender | Russell Johnson/Denise Johnson | | | |



### Comparable 4

43642 17th Street

| | |
|---|---|
| Prox. to Subject | 0.37 miles SW |
| Sales Price | 110,000 |
| Gross Living Area | 1,529 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Average |
| View | No View |
| Site | 7,040 SF |
| Quality | Average |
| Age | 21 Years |



### Comparable 5

1768 Mesa Drive

| | |
|---|---|
| Prox. to Subject | 0.36 miles NW |
| Sales Price | 90,000 |
| Gross Living Area | 1,738 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.00 |
| Location | Average |
| View | No View |
| Site | 6,710 SF |
| Quality | Average |
| Age | 21 Years |

### 6

Prox. to Subject
Sales Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

Main File No. 2051Mor/VC0737  Page #17

**Building Sketch**

| | |
|---|---|
| Borrower/Client | Russell Johnson/Denise Johnson |
| Property Address | 2051 Morningside Avenue |
| City | Lancaster    County Los Angeles    State CA    Zip Code 93535 |
| Lender | Russell Johnson/Denise Johnson |



**Area Calculations Summary**

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 913 Sq ft | 0.5 × 1.5 × 2 | = 1.5 |
| | | 0.5 × 2 × 2.5 | = 2.5 |
| | | 5 × 2 | = 10 |
| | | 14 × 8 | = 112 |
| | | 21 × 17 | = 357 |
| | | 14 × 25 | = 350 |
| | | 5 × 16 | = 80 |
| Second Floor | 540 Sq ft | 14 × 15 | = 210 |
| | | 14 × 10 | = 140 |
| | | 19 × 10 | = 190 |
| **Total Living Area (Rounded):** | **1453 Sq ft** | | |
| Non-living Area | | | |
| 2 Car Attached | 440 Sq ft | 22 × 20 | = 440 |

# Exhibit 4

B6I (Official Form 6I) (12/07)

IN RE Johnson, Russell Thomas & Johnson, Denise _____ Case No. _____
                                   Debtor(s)                                         (If known)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on From 22A, 22B, or 22C.

| Debtor's Marital Status | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Married** | RELATIONSHIP(S):<br>**Son** | AGE(S):<br>**10** |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | | **Mortgage Loan Coordinator** |
| Name of Employer | | **Bank Of America** |
| How long employed | | **8 months** |
| Address of Employer | | **4000 W. Alameda**<br>**Burbank, CA  91505** |

**INCOME:** (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | SPOUSE |
|---|---|---|---|
| 1. Current monthly gross wages, salary, and commissions (prorate if not paid monthly) | | $ _____ | $ **5,622.42** |
| 2. Estimated monthly overtime | | $ _____ | $ _____ |
| **3. SUBTOTAL** | | $ **0.00** | $ **5,622.42** |
| 4. LESS PAYROLL DEDUCTIONS | | | |
| a. Payroll taxes and Social Security | | $ _____ | $ **849.97** |
| b. Insurance | | $ _____ | $ _____ |
| c. Union dues | | $ _____ | $ _____ |
| d. Other (specify)   **See Schedule Attached** | | $ _____ | $ **1,471.85** |
| | | $ _____ | $ _____ |
| **5. SUBTOTAL OF PAYROLL DEDUCTIONS** | | $ **0.00** | $ **2,321.82** |
| **6. TOTAL NET MONTHLY TAKE HOME PAY** | | $ **0.00** | $ **3,300.60** |
| | | | |
| 7. Regular income from operation of business or profession or farm (attach detailed statement) | | $ _____ | $ _____ |
| 8. Income from real property | | $ _____ | $ _____ |
| 9. Interest and dividends | | $ _____ | $ _____ |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | | $ _____ | $ _____ |
| 11. Social Security or other government assistance (Specify) **See Schedule Attached** | | $ **2,961.30** | $ **174.61** |
| | | $ _____ | $ _____ |
| 12. Pension or retirement income | | $ _____ | $ _____ |
| 13. Other monthly income (Specify) _____ | | $ _____ | $ _____ |
| | | $ _____ | $ _____ |
| | | $ _____ | $ _____ |
| **14. SUBTOTAL OF LINES 7 THROUGH 13** | | $ **2,961.30** | $ **174.61** |
| **15. AVERAGE MONTHLY INCOME** (Add amounts shown on lines 6 and 14) | | $ **2,961.30** | $ **3,475.21** |

**16. COMBINED AVERAGE MONTHLY INCOME:** (Combine column totals from line 15; if there is only one debtor repeat total reported on line 15)

| $ **6,436.51** |
|---|

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
**None**

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

IN RE <u>Johnson, Russell Thomas & Johnson, Denise</u> _____ Case No. _____
                            Debtor(s)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
### Continuation Sheet - Page 1 of 1

| | DEBTOR | SPOUSE |
|---|---|---|
| Other Payroll Deductions: | | |
| SDI | | 52.59 |
| 401K | | 274.63 |
| Accl Death Dismem | | 4.25 |
| Commute Ben Pretx | | 268.34 |
| LTD Pre Tax | | 14.69 |
| Dental Plan | | 73.84 |
| Medical Plan | | 335.38 |
| Vision Plan | | 15.25 |
| Assoc Supp Lif In | | 60.19 |
| Commute Ben Post | | 63.83 |
| Def Comp Loan | | 125.43 |
| Def Comp Loan 2 | | 26.35 |
| Dep Child Life | | 0.50 |
| Dependent Life- Spouse | | 26.82 |
| Less Imputed Income | | 129.76 |
| | | |
| Social Security or other government assistance: | | |
| Social Security | 393.00 | |
| Postal Retirement | 1,498.00 | |
| Injured Veteran | 1,070.30 | |
| Pension From Deceased 1st Husband | | 174.61 |

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

# Exhibit 5

B6J (Official Form 6J) (12/07)

IN RE **Johnson, Russell Thomas & Johnson, Denise** _____ Case No. _____
<div style="text-align:center">Debtor(s)</div>                                          (If known)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made biweekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | **1,383.00** |
| a. Are real estate taxes included?    Yes ✓  No ____ | | |
| b. Is property insurance included?   Yes ✓  No ____ | | |
| 2. Utilities: | | |
| a. Electricity and heating fuel | $ | **153.91** |
| b. Water and sewer | $ | **82.30** |
| c. Telephone | $ | **201.37** |
| d. Other  **See Schedule Attached** | $ | **178.41** |
| | $ | |
| 3. Home maintenance (repairs and upkeep) | $ | **300.00** |
| 4. Food | $ | **1,095.00** |
| 5. Clothing | $ | **200.00** |
| 6. Laundry and dry cleaning | $ | **85.00** |
| 7. Medical and dental expenses | $ | **120.00** |
| 8. Transportation (not including car payments) | $ | **762.00** |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | **260.00** |
| 10. Charitable contributions | $ | |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
| a. Homeowner's or renter's | $ | **35.00** |
| b. Life | $ | **38.00** |
| c. Health | $ | |
| d. Auto | $ | **267.90** |
| e. Other _____ | $ | |
| | $ | |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
| (Specify) _____ | $ | |
| | $ | |
| 13. Installment payments: (in chapter 11, 12 and 13 cases, do not list payments to be included in the plan) | | |
| a. Auto | $ | **478.56** |
| b. Other _____ | $ | |
| | $ | |
| 14. Alimony, maintenance, and support paid to others | $ | **525.00** |
| 15. Payments for support of additional dependents not living at your home | $ | |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | |
| 17. Other  **Pets** | $ | **75.00** |
| **Bank Charges** | $ | **86.00** |
| | $ | |

| | | |
|---|---|---:|
| **18. AVERAGE MONTHLY EXPENSES** (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data. | $ | **6,326.45** |

19. Describe any increase or decrease in expenditures anticipated to occur within the year following the filing of this document:
**None**

### 20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---:|
| a. Average monthly income from Line 15 of Schedule I | $ | **6,436.51** |
| b. Average monthly expenses from Line 18 above | $ | **6,326.45** |
| c. Monthly net income (a. minus b.) | $ | **110.06** |

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

| In re: Russell Thomas Johnson & Denise Johnson | CHAPTER: 13 |
| | CASE NUMBER: 09-26016 |
| Debtor(s). | |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1672 W Ave J, Suite 207C, Lancaster, CA 93534

A true and correct copy of the foregoing document described as __Amended Notice of Motion and Motion to Determine__ __Secured Value of Real Property; To Stay Post Petition Payments to HSBC...__ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _3/18/10_ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 3/18/10 | Jeannette Buteyn | |
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

In re: Russell Thomas Johnson & Denise Johnson

Debtor(s).

CHAPTER: 13

CASE NUMBER: 09-26016

**ADDITIONAL SERVICE INFORMATION (if needed):**

Russell & Denise Johnson
2051 Morningside
Lancaster, CA 93535

PNC Mortgage, a division of PNC Bank
Bankruptcy Dept
3232 Newmark Dr
Miamisburg, OH 45342

HSBC Mortgage Services, Inc.
636 Grand Regency Blvd
Brandon, FL 33510

CT Corporation System - Agent for
Service of Process for HSBC Mtg
818 West Seventh St
Los Angeles, CA 90017

Trustee Elizabeth Rojas
Noble Professional Center
15060 Ventura Blvd., Suite 240
Sherman Oaks, CA 91403

Judge Geraldine Mund
21041 Burbank Blvd, Suite 342
Woodland Hills, CA 91367

United States Trustee (SV)
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367-6550

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1